THOMAS L. GASKILL, RECEIVER OF THE STERLING BUILDING AND LOAN ASSOCIATION, DEFENDANT IN ERROR, v. JOHN H. POLHEMUS, PLAINTIFF IN ERROR.

Submitted December 8, 1903—Decided May 13, 1904.

A shareholder in a building and loan association gave a withdrawal notice, and before the period arrived at which, under the laws of the association, he was entitled to be paid the withdrawal value of the shares, he borrowed from the association a sum of money, less than such withdrawal value, for which he gave his promissory note and deposited with the association his shares as collateral. The association having subsequently been declared insolvent, its receiver brought suit to recover the amount of said note. *Held,* that the defendant could not offset the withdrawal value of his shares.

On error to the Supreme Court.

For the plaintiff in error, *Vreeland, King, Wilson & Lindabury.*

For the defendant in error, *Thomas L. Gaskill.*

The opinion of the court was delivered by

GARRISON, J. This is an action on a promissory note brought by the receiver of an insolvent building and loan association against the maker. The defence is that the association, while a going concern, became indebted to the maker of the note in a sum in excess of its amount, which he is entitled to offset against the claim of the receiver.

The right to offset was denied at the trial and a verdict directed in favor of the receiver.

The undisputed facts are that the defendant, who was a shareholder in the building and loan association, filed a withdrawal notice, which, after thirty days, would entitle him to be paid $154 when such sum should be in hand for that purpose after the payment of prior applications to withdraw. Accompanying the blank notice of withdrawal sent to the defendant was this letter:

"NEWARK, N. J., November 21st, 1900.
"J. H. Polhemus, Esq., Whippany, N. J.:

"DEAR SIR—Yours of 19th received and noted. We enclose herewith withdrawal notices as per your request. Under the marked copy of enclosed constitution you will see that there will be some delay in settling with you, if you must *realize on your investment, turn to the next page of the constitution and act on its suggestion.* This will allow you to borrow any amount you need from $10 up to $125, for which accommodation there will be a charge of 8 cents per month on every $10 borrowed, which charge will be deducted from the balance still due you when settling with you on withdrawal.

"Your taking a stock loan will not affect your notice of withdrawal.

"If you prefer to borrow on your shares and continue your present shares, instead of taking out new, this can be done.

"Yours respectfully,
"THE STERLING BUILDING, LOAN AND INVESTMENT CO.,
"D. H. MILLER."

Later the following communication was sent and received:

"NEWARK, N. J., December 15th, 1900.
"*J. H. Polhemus, Esq., Whippany, N. J.:*

"DEAR SIR—Yours of the 4th received and noted. From which it would seem we have not written fully enough explaining a stock loan; we do not propose to loan you your own money, but the funds of the company; you have filed notice of withdrawal for your funds and will await your turn with the others; now, as an accommodation to you, we propose making you a loan and accepting your stock certificate as collateral security, instead of requiring a bond and mortgage on real property as security.

"Yours respectfully,

"THE STERLING BUILDING, LOAN AND INVESTMENT CO.,

"D. H. MILLER,

"Sec'y and Gen. M'g'r."

The best evidence of what followed is the testimony of the defendant himself—this is what he says:

"*Q.* As I understand, Mr. Polhemus, you served notice upon the officers of the association, that you desired to withdraw, and they then said to you, by these letters which you have referred to, that you could not get your money at that time; is that the way you understood it?

"*A.* Yes, sir.

"*Q.* How long did you understand you would have to wait before you could get it?

"*A.* I understood I would have to wait for some time; I don't know as any time was mentioned.

"*Q.* You then decided to accept $126 as a loan and give your note as security, did you?

"*A.* Yes, sir.

"*Q.* And deposit your stock as collateral security for the loan of $126?

"*A.* Yes, sir.

"*Q.* That is all."

This testimony clearly shows an election by the defendant to become a debtor to the association to the extent of $126 until he should become entitled, under the laws of the association, to receive the withdrawal value of his shares, and pending this period to continue to be a shareholder. The note he speaks of is the one now in suit. The mode in which this note was to be repaid, viz., by deducting it from the value of his shares when he should become entitled to withdraw from the association, while within the contemplation of the parties to the negotiation (although not in view of insolvency) was not incorporated by them in the written contract. Such contemplation therefore forms no part of the contract sued upon and its administration is not within the competence of the court in which the action was brought. The circumstance that the defendant, by becoming a borrower, should not lose the benefit of his priority of notice of withdrawal is without any bearing upon the contract in suit.

The controlling circumstance is that the defendant did that which, *ex necessitate,* impressed upon him the continuing *status* of a shareholder, a *status* he still held at the time the insolvency of the association was decreed. At that juncture the defendant was clearly a legal debtor to the association, while it is not shown that he had become its creditor in any other capacity than that of shareholder. The former of these relations affects the creditors of the insolvent association; the latter is of possible concern to its shareholders alone. The defendant's debt, which is now vested in the receiver, is therefore all that can be litigated in a court of law. The validity of any claim he may have against his fellow shareholders must be adjudged elsewhere. Such claim obviously possesses none of the features of a legal setoff. This result, resting, as it does, upon the force given to the election of the defendant to remain a shareholder until his debt was adjusted, renders it unnecessary to decide at what period he would, but for such election, have ceased to be a shareholder, or to determine whether

testimony tending to show actual insolvency prior to the decree of the Chancellor was irrelevant.

The judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 11.

*For reversal*—DIXON, SWAYZE. 2.